Good morning, Your Honors. John Dodd for Appellant San Jose Christian College. I'd like to hit the basic three areas of this appeal, which would be the free exercise area, the RELUPA area, and the CEQA RELUPA area. The main point in the free exercise issue is whether or not zoning laws are neutral laws of general applicability. First, this is not technically a neutral zoning law because only a hospital is permitted in this particular zone. Churches aren't permitted, so to that extent it is not a neutral zoning law anyway. But the bigger point, as pointed out in Smith, is that when there's an individualized government assessment and a mechanism for these exemptions, then strict scrutiny must apply. From Hialeah, we learned that this is not just restricted to the employment discrimination area. And, in fact, the facts of this case demonstrate that there is such an applicable exemption because planning staff kept recommending that my client's application be granted. So we have a case in which there is this archetypal exemption. Counsel, before you go further, where are you getting your definition of neutral zoning law? I would just define just based on the facts. Other than maybe this Court's case in Christian Gospel Church, I do not believe that there is a circuit court case post-Ralupa which defines specifically neutral zoning law. So your argument is that if a particular portion of the city is zoned for one particular use, that necessarily cannot be a neutral zoning law? I would say yes. Okay. What's your case authority for that proposition? Because that's a pretty radical proposition. What case authority do you have to support that proposition? Other than Smith, I don't. And I will admit that, in fact, that is just a point that came to me while I was sitting here in the audience today that has not been briefed. I was just looking at what does neutral mean. And traditionally they say, you know, areas that churches cannot be in this zone, whereas theaters and other places where large people can congregate, those cases have said that those... See, if it said churches can't be in this zone, it might well not be a neutral thing. Yes. But if it says, you know, this is zoned for hospital, I'm not sure that's the kind of... Other than unrestricted use wouldn't pass the neutral. It's basically the inverse. That's what Judge Canby was asking about. It's been what's on my mind all through reading the briefs and excerpts here. If the city of Morgan Hill takes a position, anything but a Bible college, then there's a very serious First Amendment problem there. If they say nothing but a hospital, then the First Amendment issue, such as it is, is vastly attenuated. And my impression is that what they're saying is nothing but a hospital, not anything but a Bible college. Yes. If I misunderstand that, correct it for me. No, I agree with that. And again, I just happened to think of that this morning on what does neutral mean. But in any event, the main issue, as was briefed, was where you have this system of exemptions, do you apply strict scrutiny? And the importance of that is brought out, not to mix issues, but in the Valupa issue, where they talk about in the legislative history that, well, maybe the law is neutral on its face, but in its application, the staff and the city councils and whomever approve anything but a church, anything but a Bible college. And because of the danger of infringing on the First Amendment rights, where you have the system in place, in those cases— Wait a minute. Where is the First Amendment issue? Once it's not anything but a Bible college, but nothing but a hospital, then it seems to me two people can come to the zoning board. One says, I want to put a Bible college here. Another says, I want to put a shopping center here. They both lose. They lose for the same reason, and they lose just as predictably. So there isn't any interference in that hypothetical case with the Bible college. Why is this case different from that hypothetical case? Because Smith and Hialeah tell us it is, where you have a system of individualized exemptions, which applies in all zoning decisions. Tell me the language to look at in Smith and Hialeah. I've got them right here. I might have to pull out my handy-dandy proof. While I'm doing that, the two district court cases which have specifically addressed that issue, mainly the more recent case from the Cottonwood Christian Center from this particular district, went through a very extensive analysis and agreed with that line of cases that, in fact, zoning laws are not neutral laws of general applicability because they involve the individualized assessments. Well, maybe when I come back on my couple minutes of rebuttal, I can give you a pinpoint site. So, in fact, we do have a case from this particular district which has reached that conclusion, albeit a district court decision. The court here relied on the Christian Gospel Church decision for sort of a generic authority that all the zoning laws are reviewed under the rational basis test. Our point about Christian Gospel Church is essentially twofold. One, it was pre-Smith, and it was just, I believe, just months pre-Smith, so it did not take into account this exemptions language. But even so, this Ninth Circuit's test in Christian Gospel Church is not a rational basis test. It uses a language of compelling state interests, and it relies on Callahan and Yoder and Sherwin. So it's not a rational basis case. It lays out a specific three-part test, which is a compelling governmental interest test. And so the court was just, even following that case, if this court weren't inclined to reevaluate it in the last, you know, it's been there for 13 years, there might be a chance to look at it. When you get to the compelling government interest test, if the zoning doesn't speak to the exercise of religion as such, what it speaks to is use of the land as a hospital as opposed to anything else. Why wouldn't that just be a rational basis test? Because the denial of their application to use it to exercise their First Amendment rights impacted their free exercise of religion. So if you come into a residential neighborhood and pick out one of the houses and say, we want to make this into a church, their state has to show a compelling interest. Why you shouldn't get a variance for that? Yes. That is our position. And whether this court wants to adopt that position under a free exercise analysis, we believe it must adopt that analysis under a RLUIPA analysis, because that's basically what RLUIPA says. Moving to the RLUIPA argument, their whole theory on RLUIPA is that the law was frozen in time pre-Smith because of some language in the legislative history that says essentially, well, we're not enacting constitutional law here. And all that was, in my opinion, was an attempt to get around the Bernie problem, where the Supreme Court says, no, no, Congress, you're not the courts. You can't declare constitutional rights. You can't do this and that and the other. And they just wanted to make it very clear that that was not what was going on in RLUIPA. So there is no authority whatsoever for this frozen in time rule. And, in fact, that's made clear by the Mayweather's case on which Judge Rollins was on the panel that said that Smith was a floor, not a ceiling for constitutional protection. So RLUIPA is directed specifically at zoning. So all the RFRA cases upon which they rely that talk about, well, this is not a substantial burden, this, that, and the other are not even relevant because if the thing that troubled me about this case is the same thing that you have raised, that it's an individualized zoning determination, a negotiated determination. But I'm wondering whether I'm mistaken in being as troubled as I am by that. I'm thinking, suppose you have a zoning determination that is general. It's not individualized. It's not just negotiation. It's no more than five cars can be parked on parcels of one acre or less. Somebody has a one-acre parcel, and they construct a parking lot for ten cars. It violates the zoning code. But if they're running religious services in the building on that parcel, you're saying it's constitutionally protected. Have I got this right? Yes. But it just determines on which test you apply. It doesn't say that that activity can't under some scenario be prohibited. It just depends on how you get there. If they can demonstrate their compelling governmental interest and if they can demonstrate their least restrictive means, then there's no problem. But, again, even if the court didn't want to extend or solidify, because we believe it's not an extension under Smith to that analysis under free exercise, it's required to under RLUIPA because that's what RLUIPA is all about. And additionally, their argument that under RLUIPA, my client was somehow required to come back again and again and again and again to the city council is totally unsupported. If your constitutional right or your federal statutory right is violated, it's violated. You don't have to come back next month and say, are you going to deny me again and come back the month after that and say, are you going to deny me again? See, in applying RLUIPA, in my example of you're coming to a house in the neighborhood and saying we want to make this a church, I think before you trigger RLUIPA, you would have to say that denial imposes a substantial burden on a religious exercise of a person or a religious institution. Correct, Your Honor. Judge Gambach. Well, it's a substantial burden on free exercise when you don't get a zoning variance that would be denied to anybody else who is trying to change the use? Yes, it is. And in fact, since RLUIPA specifically addresses conversion of property and a change of the zoning, this is specifically the type of case that Congress envisioned. And they intended, because of the discrimination against churches and particularly minority churches and small religions, maybe they couldn't afford a big building or couldn't afford a big hospital, you know, that they wanted to meet in homes and they wanted to meet in small storefronts. And they were denied that. This is specifically the target of this particular legislation. And since this was the place, the piece of property that my clients owned to develop for their church college, then it's just by the plain language of the words. It's a substantial burden to say you folks have searched for 15 years for a piece of property, you bought this piece of property to train your pastors to go out and minister to folks, and you can't do it. Just common sense tells you that's a substantial burden. And that was the burden that my client bore at summary judgment. And then when we get past that, it's their burden to justify it, say that there's a compelling governmental interest and it's the least restrictive means, which is a high enough standard so that it's almost never met. There are cases that say that. But that's their problem is with RLUIPA itself, but they need to take that to Congress, not to the courts. Congress enacted this statute. This court on Judge Rawlinson's case ruled in the prison context that the statute was constitutional. Other district courts have ruled the statute is constitutional. If they don't like it, they need to go to Congress. Counsel, that case was a little different, though, in that the direct worship of the inmates was impacted. Their ability to attend particular services was impacted by the regulation of the issue. So that was a little more direct a burden. I was citing the case mainly for the premise, I believe it's almost the last paragraph in the case, where it states that Smith is a floor and not a ceiling. Their entire RLUIPA argument is premised on the theory that Smith is the ceiling and that there can be no greater constitutional rights than Smith. And this Court has said, no, that's not true. Counsel, on this argument under the Religious Land Use and Institutionalized Persons Act, it does speak, as you say expressly, to the issue of people trying to put a minority church in an area that discriminates against it. Obviously, that is a real social problem that Congress has addressed. The way it addresses it is it says that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution, or excludes religious assemblies, or unreasonably limits religious assemblies, institutions, or structures. That's the way it spells it out. Now, it seems to me that in this case it is conceded that the religious assembly is not being treated on less than equal terms with a nonreligious assembly. It's being treated with everybody but a hospital. Well, my answer to that, Your Honor, is the problem is we're here on summary judgment. And the trial court applied erroneous law and an erroneous burden of proof. And that's the reason the case needs to go back. Well, what evidence did you have that you submitted on summary judgment, I don't recall any, that showed that the Bible college was being treated on less than equal terms with a nonreligious institution? What I'm thinking of there is an affidavit from, say, a shopping center developer. I went to the zoning board, and they told me that if I put in an application, they'd approve it, something like that. There was no such application. Is there any evidence in the record to show that the municipality was treating the Bible college on less than equal terms with a nonreligious assembly or institution? No, because this was the only application. However, was there any evidence of exclusion of religious assemblies as opposed to exclusion of everybody but a hospital? I don't believe there are any other applications to use the site. So that's sort of proving a negative, and there's no way we could obtain that. We can't gin up somebody to apply to use it for some other use and say, well, you're another religious use, so you're denied, and you're another religious use, so you're denied. We're going on the plain language of the statute, which says once there's a substantial burden, this other test, a compelling governmental interest and the least restrictive means, applies. And with that, I'd probably like to save my last three minutes for rebuttal, if there's no other question. Thank you, counsel. Good morning, Your Honors. May it please the Court, John Ramirez on behalf of the city of Morgan Hill. I'd like to start out by making the point that I think it's fairly curious that while this is a RLUIPA case, Mr. Dodd started out with an analysis of the free exercise clause, because after all, one could posit the hypothetical. If, in fact, it is true under Smith that you get strict scrutiny in virtually every zoning decision, no need for RLUIPA, because that certainly would already exist and would be a normal parlance in our constitutional law scheme. But, in fact, that is not the case. What is characterized as the individual assessments test is really not an individualized assessments test. It is, in fact, an individualized exemptions test. This test flows from the unemployment compensation cases that involve statutory schemes that allow the government to decide whether or not to lift the regulation, the regulation's application, from the religious objector. In the typical scenario, you have a person seeking unemployment compensation, and the burden is on that applicant to demonstrate that there's good cause for not having secured employment. What most worried me in this case is it doesn't look like a neutral law of general applicability. As I understand the process in this particular municipality, whatever it is that you want to do, you negotiate it. And that means instead of it being a law, it's just a discretionary individualized decision cloaked under a law. And when an individualized discretionary decision is made to say no to a religious institution, I'm a little concerned about treating it as application of a neutral law of general applicability. There isn't any. It's just come to us and we'll talk about it. Well, this is a zoning determination that is really the fundamental legislative policy decision. Well, wait, there's zoning determinations and zoning determinations. One kind of zoning law is where they have a map of a part of a county or other municipality, and it says residential only on lots of at least one-half acre. And that's a neutral law of general applicability. It doesn't matter what color you are. It doesn't matter what religion you are. It doesn't matter how you like to live inside your home. It's residential only. You can't run a beauty parlor out of your house, and you've got to have at least a half acre. You can't split your lot between you and your in-laws and have quarter acre lots. That's general. But in this case, it doesn't work like that. It's not that kind of zoning law. This zoning law, it's you decide what it is that you want to do. Everything is prohibited until we say yes, and you come and talk to us and negotiate. And there it seems to me that you're not entitled to the benefit that we give neutral laws of general applicability. I actually think that's incorrect, Your Honor. This is a situation where the applicable zoning district is planned unit development zoning. That is a specific planning tool used to allow for integrated use, typically at a large site that oftentimes has currently constructed but vacant facilities. Closed military bases come to mind. Perhaps an empty office complex or an empty research park. This is a planning tool that ensures that as a legislative policy decision, the city council ensures its ability to treat that site in its entirety. But, counsel, in the PUD districts, aren't all uses permitted? All uses are permitted subject to the legislative policy decision. I think the answer to the question, which is, is this an individualized exemption scenario or is this a generally applicable scenario, I think the answer is found quite clearly in the Borney case, which is a Supreme Court case that struck down the Religious Freedom and Restoration Act. The critical difference, if you look at the case law about the individualized exemption case law, what the courts have been concerned with was the government's ability to evaluate religious conduct or religious motivation. Those are what those cases are about. For example, is good cause for not working on Saturday that my religion prohibits that? How do we know that the zoning board wouldn't have been a whole lot happier if the Bible College was, I don't know what they are or what the alternative would be, Episcopalian instead of Presbyterian or whatever? The answer, Your Honor, is found if you look at the city of L.A. case. This was a 10-month legislative process, and the entire record is void. There is zero evidence that this issue was nothing more than a debate about medical services versus school. And there was never discussion until RLUIPA was enacted. Well, one troubling aspect of that is nobody was proposing to put any medical services there. The provider of medical services had left. Nobody else wanted to come in, as far as the record shows, and provide medical services. It was a choice not between medical services and a Bible college, but between an empty white elephant and a Bible college. Those types of policy decisions are made up and down the state on a day-in and day-out basis. But they're made against Bible colleges. That seems kind of troubling, where if a couple of doctors had come in and said, I want to run a clinic, or maybe somebody had come in and said, I want to put an old-age home, or somebody else had said, I want to use this as a dormitory for a state college down the road a piece. I think the answer is twofold, Ronald. First of all, as the Court is probably aware, the courts skew inquiring into the hearts and minds of legislators. Legislative motive is irrelevant. Courts are bound to determine the validity of the legislative act based on the face of the legislature. It's really a question here of who has the burden, I think. If you've got a neutral law of general applicability, it's the Bible college's problem to show that there was some kind of discrimination. If what you have is an individualized discretionary decision that was exercised against allowing religious activity, then I wonder if you have the burden to show some compelling government interest. No. In either scenario, and I want to respond to twofold here, in either scenario, even if you accept the notion, even if this Court accepts the notion that in certain circumstances, a zoning determination could be an individualized assessment test or an individualized exemptions test, at days in, there always must be substantial burden. The burden is always on the plaintiff to demonstrate that there is a substantial burden on the exercise of religion. And there is no evidence in this record at all that there is not only a burden, but that this decision was anything other than a medical hospital versus – Provisions. PUD provisions. It will take me a second to locate that. But – I had the same impression as Judge Rawlinson did, that you could do anything. It's Supplemental Excerpts of Records 1035-38. I mentioned I was going to respond twofold. The second issue with respect to the legal issue, how do the courts treat these types of zoning determinations, I think the answer is found in Borne v. Flores, and to some extent, this Circuit's precedent in Miller v. Reed. In Borne, this case is the case the United States Supreme Court granted cert on to strike down RFRA. And this was a landmarking case that involved a Texas landmarking ordinance, which is now subject to RLUIPA. And the Court was very clear, and I'll quote the language. It says this, It is the reality of the modern regulatory state that numerous state laws, such as the zoning regulations at issue here, impose a substantial burden on a large class of individuals. When the exercise of religion has been burdened in an incidental way by a law of general application, it does not follow that these persons have been burdened any more than other citizens, let alone burdened because of their religious beliefs. So, counsel, that presupposes that we're dealing with a law of general application, and that's one of the issues that the PUD classification raises. If all uses are permitted and then the city sorts out which ones to accept and which ones to approve, that sort of belies the characterization of the PUD as a law of general applicability. I think the answer is, Judge, that there's a distinction between an assessment that involves an assessment by the government of religious motivations, religious beliefs, as compared to the policy determination you have here, medical use versus some other hypothetical use. On that, two other points. This is precisely why, in the RFRA context and in the NFRA exercise context, there are requirements that you try again. Because, after all, this is a situation where there is no evidence at all that the city was discriminating against the college because of its religious beliefs, nor, might I add, is this a case where the city was discriminating against the college as compared to a tax-generating facility. Obviously, Congress has some concerns in that regard. This is not that case. There are a whole universe of facts that exist out there in the world that may give rise to substantial burden findings in the future. This is simply not that case. This is a situation where you do not have a claim that the city was discriminating against the college because of its religious belief. This is not a situation, in fact, where the city is even claiming that this site is required for concrete and specific expansion. Because, if the court recalls from the record, only one of two universes is possible here. Either this was a situation where the college wanted to relocate its current enrollment of 400 students to the San Jose site, to the Morgan Hill site, excuse me, which is the current enrollment that served in San Jose, or, in fact, they wanted to quadruple its enrollment and build out the site, in which case we had fatal noncompliance with CEQA. Well, they had two things there. They had an immediate plan, which is to move the existing college, and they had a dream, which was to quadruple it. Well, if the court has interest, we can discuss the dream or, as I would say, substantial evidence with respect to the California Environmental Equality Act issues. But the court should focus, in our belief, on really the two issues here that they claim give rise to substantial burden. Time and money, and I think we're talking about $150,000 of consulting fees through the entitlement process. And the extraordinary notion, and I think this is truly extraordinary, and by no means do I mean to be pejorative, that two executives from a religious applicant can believe that this is so, that this is destiny, and simply a municipality rendering unavailable that site in the absence of discrimination because of the religious belief, in the absence of discrimination in favor of a tax generator, in the absence of compliance with state environmental laws, that that alone gives rise to a substantial burden. I keep coming back to the burden, really, which is affected by the individualization of the city. Maybe, I wonder if my mental picture of what we're talking about is right. What I'm imagining in my mind is a hospital where you've got a fairly large chunk of land, maybe 10 acres or more of land, a really big building, maybe a couple of smaller buildings attached by corridors and a giant parking lot, and somebody wants to turn it into some other kind of institution because the hospital is left and there are no proposals on the table by anyone to use it for any medical purpose. Have I got it right factually? Well, I certainly am not intimately familiar with the site. The site is off of the 101 freeway, and one can see it on their way down to the outlets there. I figured you probably spent a lot of time there, probably showed just what it was like. Well, it is certainly a large facility, but it is not, take, for example, a San Francisco general off of Army Street. It's not a high-rise operation. It is, I believe, a two-story location just off the 101 freeway. To the extent the court is, again, inquiring about this policy decision, the choice between two, the law of this state and the law of this country does not allow courts to act as reviewers of zoning decisions. It is not the law that there is a federal cause of action to review. Wait a minute. You've got the White Elephant Hospital. It used to be a hospital. Nobody is using it anymore. Correct. Nobody is proposing to use it for medical use. Somebody proposes to use it, they buy it, and they propose to use it for religious use. It's the only use on the table. You've got a general law, the PUD law, that says it can be used for anything at all with county approval. The Bible College goes to the county and says, will you let us teach Bible classes here and teach our ministers? And the county says, no. Why isn't that a decision about a religious use as opposed to a decision about any use? Because, at least on this record, and I think we should compare it to the city of Halea case, this is a policy decision about the desire to keep this property, this unique inventory. Now, in contrast to the college, there's no evidence that this was the only site available to it. This is the only facility in the city of Morgan Hill that could allow for the prompt reintroduction of medical services back to this site. I come from the southern part of the state in Orange County where we have a big fight over the closed Marine Corps Air Station in El Toro. For quite many years, the general plan designation designated that as a commercial aviation facility, even though the Southern California Association of Governments, as well as all of the statistical travel surveys from 9-11, demonstrate quite clearly that there is an insufficient demand to sustain an international airport at El Toro. The law of this state does not allow courts to second-guess that policy determination. This, after all, is a situation where this was the first application coming on the heels of a closure. I guess a clearer way to put my concern is how do I know that the county is making a policy determination about hospitals, which is fine, as opposed to making a policy determination about whatever religious sect proposes to teach Bible on this geography, which is not fine. Plaintiffs bore the burden of proof on that, on summary judgment, Your Honor. And the law is very clear, Doverell v. Abbey, that whether you cast this case as a RLUIPA case or a free exercise case, the law is very clear, and the threshold is showing a substantial burden. Plaintiff always bears the burden on that. We had a 10-month legislative process, and not once during that legislative process was there any allegation of intentional discrimination because of the Christian beliefs or because it's a Bible college. Zero. At summary judgment, the college relies on the administrative record. It relies on the evidence it put forth in support of its preliminary injunction. There's not one allegation that this is a scenario where there is discrimination against the college because of its religious beliefs. Contrast that with the city of Halea case. This is a Supreme Court case dealing with a city of Miami ordinance that rendered illegal the slaughtering of animals unless it was deemed to be necessary. And the record, the Supreme Court discusses the several-month process leading up to the adoption of that ordinance in great detail. It was very clear as a result of that process that the purpose of that ordinance, even though arguably it was facially neutral, was to target adherence of the Santeria faith. We don't have any of that here, and it was the burden of proof to be borne by the college. This is not a situation where we're in a position to hypothesize how they could have done it differently, how they could have litigated this case differently, what other facts may or may not have given rise to a substantial burden. This is a case on two separate occasions, i.e., the preliminary injunction stage and the summary judgment stage, where the college simply said, no discrimination, we concede that, it's time and money, and two of our executives were of the belief that this was God's calling. I might add on that point, no evidence that this belief was shared by any other faculty, board members of this 501C3, students, parents of the students, anybody. And that's not to get into an issue about second-guessing the validity of that belief because we know as a matter of First Amendment law we cannot. All that is to say, though, that it is truly extraordinary, that's an extraordinary notion, that that is in fact a substantial burden. Counsel, what will happen if we rule in favor of the appellant in this case? Appellant? I think, Your Honor, as I started out, there are a universe of facts out there that future courts will look to and define and make findings with respect to substantial burden. But, I mean, as a practical matter, if we ruled that the zoning decision made by the city was erroneous and the decision is reversed, does it go back to the zoning, to the city for zoning purposes? You're effectively compelling the granting of the permit at that point. If, in fact, that would occur, we are talking about really open sesame because if all it takes is for two people, two executives of an applicant, to say that this is a belief that God, it's our belief that God has told us to be at this site and that alone suffices to demonstrate substantial burden, then we might as well throw out all the planning commission meetings. We might as well throw out circulation of an environmental impact report. We might as well throw out city council hearings because at day's end those are going to be rendered meaningless if, in fact, the city always has to approve it. But we know that that can't be the case because we know one thing. We may not know the universe of future facts, but we know one thing, and that one thing is Congress said crystal clear in the legislative history they are not intending to grant land use immunity to religious applicants. Congress expressly called that out. You've been talking about substantial burden and what doesn't make it. I mean, do we have an enunciation of elements of a substantial burden? I mean, obviously, if there's a discrimination against the religious practice itself, then it would be a burden. I think the answer is really twofold. One is, again, the general answer, which is there are a whole universe of facts out there that will give rise to substantial burden. The question here is do the facts as we know them give rise to substantial burden. I think in terms of what we know to give rise to substantial burden, perhaps a prior vested or nonconforming right that is sought to be eliminated after it has been in use for many years through the threat of criminal enforcement. This is the Murphy v. New Milford scenario, where you have an at-home prayer group involving sick and elderly folks. This has been going on for a decade. They come in with code enforcement and actually threaten misdemeanor prosecution. Well, that is forcing the adherent to modify their beliefs under the threat of criminal enforcement. That's a scenario. I can envision a scenario where you have perhaps over-discrimination against religion in favor of perhaps tax-generating facilities. Perhaps that is. This is not that case, though. I have it. The first answer is Smith, 494 U.S. at page 884, and Hialeah, 508 U.S. at page 537, which are discussed at our opening brief at 27 and 28. That gets into the individualized assessment language. And to answer a couple of the other questions that came up on counsel's time, not only are essentially all uses permitted under a PUD unless the policy is otherwise, as in the excerpts of record at page 26, the planning staff's report says that these specific public and private educational facilities are permitted there. So that is why, as Judge Kleinfeld noted, this case is about burden. You know, if we go back and we have a trial and they believe, you know, the 12 jurors or nine good and true believe that, you know, that in fact the city had a good enough reason, you know, oh, well, we lose. But on summary judgment, this case is about the burden of proof. And because there was a substantial burden, that then pushed it over to the city side to prove a compelling governmental interest and the least destructive means that I'd like to. One comment the council made was was factually incorrect. Although this is if I understand this. You're saying that because it's an individual determination, it automatically constitutes a substantial burden. No, no, no, no. Because because that's what triggers the compelling interest. No, because that's under the free exercise analysis. Under the free exercise analysis, once there's an individualized determination, that does in fact create the higher scrutiny. Under the RLUIPA analysis, if there is just a substantial burden, that is sufficient to put the onus on them to prove the compelling governmental interest and the least destructive means. My understanding of the PUD laws is inadequate at this point. I'm going to have to study it more. But as I understand it, your neutral law of general applicability is the PUD law, which says the use is permitted. And then you've got an individualized determination. And it isn't exactly that religious uses won't be permitted on this site. It's that nothing but a hospital will be permitted. But the context in which it's made is somebody proposing a religious use. Yes, I believe that is correct, Your Honor. And the problem is the reason Congress wanted that to trigger the higher scrutiny is so we can't have the wink, wink, nod, nod, you know, as these things come through the process, just, oh, gee whiz, all of a sudden everything else but the religious use gets approved. And therefore, that requires a higher scrutiny to make sure that that didn't happen. And I want to take into task the city staff itself said that there were plenty of other areas which could be zoned for hospital uses. It just happened to be that this one little 25-acre spot, which is very close apparently to what Judge Kleinfeld described, was the only one currently zoned for hospital uses. Counsel, let me ask you this before you conclude. Is it your position that CEQA was covered under RLUIPA? Yes. Our position is that go ahead. I'm sorry, Your Honor. Do you consider CEQA then to be a zoning law? Because my understanding was that RLUIPA only covers zoning laws. RLUIPA not only covers specific zoning, but 2000CC55 of RLUIPA covers the application of such law. Of zoning laws? Yes. And so then CEQA would have to be a zoning law in order to be within the reach of RLUIPA. No. The PUD and the city's zoning law is a zoning law, and CEQA is the mechanism by which they are choosing to deny this particular permit. And that's what brings CEQA within RLUIPA. But as Judge Kleinfeld also noted, there was the initial phase, and then there's the dream out there somewhere. I thought CEQA was an environmental law rather than a zoning law. Well, it's an environmental law which regulates land, and it is being used as the foot in the door here to sustain their land use determination. Do you have any case authority to support that argument? This is the first case, as far as I know, of integrating CEQA and RLUIPA together. The language in RLUIPA isn't zoning. It says land use regulation. Yes, or application. So I guess what I want to know is does this California environmental law, is that a land use regulation law or what is it? It's an environmental law, but land is part of the environment. So is the air. So is that. So is water. And so I'm not sure that CEQA is land use regulation. If, in fact, CEQA is exempt entirely from RLUIPA, then all any municipality would have to do to avoid RLUIPA is just say, you know, CEQA violation, CEQA violation. But that's almost a moot point because here they're. That would suffice only if the religious organizations are unable to comply with CEQA in the way that other applicants would comply. But they did comply because under California law, the Laurel Heights case specifically talks about you don't need to generate plans which are merely a gleam in the planner's eye. And that is literally what we had here. We had a president. He finally had his vision of his own campus. So we could do this. We could do that. We could do, you know. And it turned out that none of that was going to happen any time in the next 20 years. There's no plans for it. They didn't come up with any plans for it. And even if they did, that would be a factual issue which could not be resolved on summary judgment because we say one thing and they say another. That's a trial. That's not summary judgment. Thank you. We are adjourned until 9 a.m. tomorrow. And City of Morgan Hill and San Jose is submitted.
judges: Canby, Kleinfeld, Rawlinson